Defendant-appellant, Green Township Board of Zoning Appeals, appeals the October 8, 1997 decision of the Mahoning County Court of Common Pleas ordering appellant to grant a zoning variance to plaintiff-appellee, Julia Strohecker.
Following her divorce, appellee became sole owner of a parcel of land in Green Township, Ohio. The parcel was situated on the north side of South Range Road with a front of 226 feet, extending northwards some 2,167 feet. At one time, a residence had existed on the southeast corner of the parcel, but the home was destroyed by fire, leaving a gutted frame.
In an effort to sell the property, appellee planned to plat the parcel into two lots. Lot 1 would exist in the southeast corner of the parcel with a front of 166 feet, extending northwards some 363 feet from the road. Lot 2 would constitute the remainder of the parcel, with a front of 60 feet on the road. Appellee located a potential purchaser for Lot 1, Dan Bucci, who intended to build a "double-wide" home over the site of the destroyed home.
A Green Township zoning ordinance requires that when a residence is placed upon land in an agricultural district, the lot on which it is placed must have no less than 125 feet of frontage on a public street or road. Because appellee's lot was zoned agricultural, her plan to divide the parcel required her to seek a variance from the 125 feet requirement so that any future owner of Lot 2 would be permitted to build a residence thereon.
On July 15, 1996, appellee filed an application for a variance with appellant. Following a hearing, appellant denied the application in a decision dated July 22, 1996. On July 26, 1996, pursuant to R.C. Chapter 2506, appellee appealed the decision to the Mahoning County Court of Common Pleas.
Subsequent to the filing of her appeal, on September 9, 1996, appellee and Bucci entered into an agreement. The agreement provided that the entire lot would be deeded to Bucci, and that Bucci would be assigned appellee's rights and interests in the appeal. The agreement also provided that if the appeal was unsuccessful Bucci would retain ownership of the entire lot, whereas if the appeal was successful Bucci would retain ownership of Lot 1, while Lot 2 would be deeded to Michael and Jayme Ruby pursuant to the terms of a purchase agreement.
On September 23, 1996, the trial court ordered appellant's decision vacated due to the unavailability of a transcript. A second hearing was held on October 29, 1996 and appellee's application was again denied. On November 7, 1996, appellee again appealed to the common pleas court. On April 28, 1997, a magistrate's decision was filed finding that appellant's denial of the area variance was an unreasonable and arbitrary enforcement of the ordinance. The magistrate reversed appellant's decision and ordered appellant to issue the variance to appellee.
On May 12, 1997, appellant filed its objections to the magistrate's decision. Unaware that objections had been filed, the trial court adopted the magistrate's decision on May 16, 1997. On June 9, 1997, appellant appealed the trial court's decision to this court and simultaneously filed a motion to vacate the judgment in the trial court. This court granted limited jurisdiction to the trial court for purposes of ruling on the motion to vacate in a journal entry dated June 10, 1997.
On July 10, 1997, the trial court vacated its prior judgment pursuant to appellant's request, stating that due to a backlog in the Mahoning County Clerk of Courts, the trial court had been unaware of appellant's filed objections. Accordingly, on September 4, 1997, the appeal taken was dismissed. On October 8, 1997, the trial court, having received the objections to the magistrate's decision, again adopted the magistrate's decision reversing appellant's decision. It is from this decision of October 8, 1997 that appellant now brings this timely appeal.
Appellant's three assignments of error state as follows:
 "THE TRIAL COURT ERRED IN REVERSING THE DECISION OF THE GREEN TOWNSHIP BOARD OF ZONING APPEALS AND/OR ABUSED IT'S [sic.] DISCRETION IN REVERSING THE DECISION OF THE GREEN TOWNSHIP BOARD OF ZONING APPEALS."
 "THE TRIAL COURT ERRED IN NOT PROPERLY APPLYING THE DUNCAN AND NEGIN TESTS TO THE PRESENT SITUATION [.]"
 "THE TRIAL COURT ERRED IN DETERMINING THAT THE DECISION OF THE BOARD OF ZONING APPEALS CREATED A HARDSHIP AND/OR PRACTICAL DIFFICULTIES TO THE APPELLEE."
Because all three of appellant's assignments of error argue that the trial court's decision was an abuse of discretion and contrary to the evidence adduced at the hearing, we will treat them collectively.
When the decision of a board of zoning appeals is appealed to a court of common pleas the scope of review is determined by R.C. Chapter 2506. R.C. 2506.04 states that:
 "The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." (Emphasis added.)
The trial court must give due deference to the agency's resolution of evidentiary conflicts and the court may not substitute its judgment for that of the agency. SeeAdelman Real Estate Co. v. Gabanic (1996), 109 Ohio App.3d 689.
An appeal to this court is more limited in scope and requires us to affirm the common pleas court unless we find, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence. See Kisil v. Sandusky (1984), 12 Ohio St.3d 30,34. A court of appeals may review the judgment of the common pleas court only on questions of law, and does not have the extensive power to weigh the preponderance of substantial, reliable and probative evidence as is granted to the common pleas court. See Id., at 34, n. 4. Within the ambit of "questions of law" for appellate court review would be abuse of discretion by the common pleas court. Id. Accordingly, this court must affirm the trial court's decision unless the decision was unsupported by a preponderance of reliable, probative, and substantial evidence, or unless the decision was unreasonable, arbitrary, or unconscionable.
In the limited weighing of the evidence to be undertaken by the common pleas court, consideration must be given to the nature of the evidence, including the question of whether it was given under oath and was subject to cross-examination.In re Rocky Point Plaza Corp. (1993), 86 Ohio App.3d 486,493. Furthermore, as the court of appeals in Adelman, supra, noted:
 "The fact that adjudicatory hearings are to be open to the public does not result in their transformation into legislative public hearings with the corresponding right to receive input of public comment at that time. The ploy of swearing in the members of the public does not alter the fact that the bulk of these witnesses are merely offering their subjective and speculative comments and unsubstantiated opinions. Such testimony cannot rise to the level of the reliable, probative, and substantial evidence required under Kisil and Dudukovich unless there are facts included as part of those opinions."
 Foldman, supra, at 694. Appellee's application was for an are variance. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties. See Kisil, supra, at syllabus.
 "The factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property include, but are not limited to: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance." Duncan v. Middlefield (1986), 23 Ohio St.3d 83, at syllabus. (Emphasis added.)
Appellant held a hearing on October 29, 1996. The proceedings began by counsel for appellee informing appellant that he and appellee's realtor, Don Capel, would be putting on evidence for the variance. Appellant then indicated that it was necessary to swear in everybody who intended to speak at the hearing. Following the swearing in, counsel for appellee made an opening statement and then put Capel on the stand. Through the testimony of Capel, appellee introduced evidence of appellant having previously issued some seven frontage variances, permitting frontages of between sixty feet and twenty-two feet. The plats of the aforementioned variances were introduced into the record.
Capel also testified concerning appellee's requested variance indicating that appellee had bought out her former husband's half of the property because he was not able to buy her out. Capel also testified that the sixty feet variance had been placed on the west side of the property at the request of neighboring landowner Mr. Gasper, because in the event that Gasper were to buy Lot 1 he preferred that the driveway to Lot 2 traverse the west side of the property.
According to Capel, appellee's purchase agreement with Bucci included a provision that Bucci would tear down the fire damaged house situated on Lot 1 in order to keep the cost of the property down. In addition Bucci had purchased a "double-wide" manufactured home for the lot which appellant had already approved. Capel also testified that Ruby had entered into a purchase agreement with appellee to buy Lot 2 and intended to build a home on it. Capel stated that the property was offered as a whole but after Bucci purchased Lot 1, the remaining acreage was offered to Gasper and to a son of Ms. Gale Durr who apparently felt the asking price was too much.
Following Capel's testimony, Ms. Susan Wrobleski then asked questions related to whether a purchaser of Lot 2 would be able to build more than one home on the property. Capel responded that because the land was zoned, any more than one home would require a zoning change and the installation of a public street. Ms. Wrobleski then expressed her opinion that the previously permitted variances should have no bearing on the variance requested by appellee, and Mr. Wrobleski expressed his concern that granting the variance would create traffic problems and congestion, and that the variance should not be granted just because appellee could not find a purchaser for the entire property.
In response Capel testified that the property was first offered to two neighbors, neither of whom was willing to pay the asking price. Mrs. Gasper then inquired about the current ownership of the property and Capel explained to her the agreement entered into between appellee and Bucci. Capel explained that the agreement had been necessary because appellee had had some recent health problems requiring her hospitalization and was not able to tear down the damaged structure as she had been ordered to by the township. Because neither she nor her husband were working, both being over sixty five, and because they did not have health insurance, appellee needed to sell the property and Bucci agreed to take the whole property, pending the appeal, so that he could begin work on the property.
Capel also testified that the potential purchaser of Lot 2 had expressed a desire to construct a single residence on the land. Mrs. Gasper voiced her objection that the proposed split would result in people trespassing on her property and that it would interfere with her spraying of agricultural equipment. In response, Capel suggested that if her spraying were a dangerous operation, she should perhaps consider a fence.
Capel also testified that the township had told appellee that if she did not tear down the damaged structure it would be torn down and added to her tax duplicate and that if she did not mow the grass it would be done for her and added to her tax statement, both tasks that Bucci agreed to do once the property was his. The township zoning inspector, Trent Shirey, appeared to voice concerns about the ability of the fire department to get back to the proposed property on Lot 2 but conceded that this was rarely a problem. Mr. Dan Kuhns, a self-professed "interested spectator" suggested a split down the middle, thereby creating two lots with 113 feet of frontage, to which Capel responded that a variance would still be necessary, and that because the existing basement was in the center of the property, additional expense would result from Bucci being unable to use it. Kuhns also questioned the efforts made to sell the property as a whole, to which Capel responded that he had not advertised the property in the newspaper due to a combination of time constraints imposed upon appellee to remove her ex-husband's personal property from the land, and disagreements over the price in ongoing efforts with neighboring land owners to sell the lot. Capel also testified that he had placed a sign on the property but that within a half hour the sign had disappeared.
Comments were also made by two individual members of appellant, Mr. Habeger and Mr. Bennett. Habeger stated his opinion that the previously granted variances should have no bearing on appellee's requested variance, and Bennett expressed his concern that the property had not been advertised as a whole in a real estate magazine and that he felt appellant was compelled to take into consideration the fact that 100% of the landowners present were against the variance.
Finally, appellee herself testified, responding to Mr. Gasper's concern with traffic by pointing out that the petting zoo operated on the Gasper property was responsible for at least one hundred cars a day during the summer. Appellee also stated her opinion that the comments made by the Wrobleskis were based on vindictiveness and urged appellant to note that.
Based on this record appellant denied the requested variance. On appeal, the trial court found that the denial of the variance by appellant was an unreasonable and arbitrary enforcement of the zoning ordinance and reversed appellant's decision.
This court is limited in its review of the trial court's decision to a determination of whether the trial court erred as a matter of law. We do not have authority to weigh the evidence, but must decide whether the trial court's determination that appellee had shown practical difficulties was supported by a preponderance of reliable, probative and substantial evidence.
With respect to the first of the factors laid out inDuncan, supra, whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance, the evidence in the record indicates that appellee was unable to find a purchaser for the property that was willing to pay anywhere near the asking price, in part because a proposed purchaser would have to absorb the cost of demolishing the fire damaged structure on the property. Appellee's realtor testified to the difficulties experienced in attempting to sell the lot as a whole.
The second factor, whether the variance is substantial, also supports the trial court's decision. The requested variance was for sixty feet of frontage, yet appellee introduced evidence of appellant approving variances for frontages as small as twenty two feet.
With respect to the third factor, whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance, the evidence was that appellant had previously approved seven such variances and that the owner of Lot 2 would be limited to building a single residence. There was no evidence of substantial detriment to adjoining properties, only unsubstantiated speculation about trespassers and traffic problems.
The fourth factor, whether the variance would adversely affect the delivery of governmental services, was touched upon by the township zoning inspector who conceded that access for the fire department was rarely a problem. In any event, as the magistrate noted, the issuance of a variance would not aggravate this concern, in that a residence could be set back some 1,300 feet from the road with or without a variance.
Although the fifth factor, whether the property owner purchased the property with knowledge of the zoning restrictions, appears to support appellant's position, the evidence indicates that appellee's purchase was not entirely voluntary in that appellee's divorce necessitated her buying out her former husband's share of the property. In any event, appellee was presumably also aware at the time of purchase that appellant had a policy of liberally granting variances from the frontage requirement.
With regards to the sixth factor, whether the property owner's predicament feasibly can be obviated through some method other than a variance, the record demonstrates that appellee had been unable for a variety of reasons to sell the property as a whole at a reasonable price. Although several of those present at the hearing appeared to argue that appellee could have done more to sell the lot as a single property, notwithstanding the difficulties she encountered, the fact remains that she was unable to do so.
Finally, as for the seventh factor, whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance, we find a wealth of evidence to support the trial court's decision. The trial court ruled that but for a messy divorce and a devastating fire, appellee would not have needed the variance. Appellant claims that the trial court impermissibly considered various unfortunate events in appellee's life when making its decision, in particular, appellee's difficult divorce and the destruction of her home. However, we note that the factors the trial court is to consider in making its determination "include, but are not limited to" those enumerated inDuncan. See Duncan, supra, at syllabus. Given appellee's age and poor health, her inability to maintain the property in the face of threats from the township to assess her for doing so itself, the difficulty experienced in finding a purchaser for the entire property, and Bucci's offer to buy a part of it, we cannot say as a matter of law that the trial court abused its discretion in granting the variance.
Appellant has failed to demonstrate that the trial court's decision was error as a matter of law. Accordingly, appellant's three assignments of error are without merit.
The decision of the trial court is hereby affirmed.
Cox, J., concurs
Vukovich, J., concurs
APPROVED:
 --------------------------- GENE DONOFRIO Judge